UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LEE CHERRY,

     Plaintiff,        Case Number 18-13883
v.                  Honorable David M. Lawson

AMERICAN COUNTRY INSURANCE
COMPANY,

     Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

  This insurance coverage dispute has its beginnings in an automobile accident. Defendant American Country Insurance Company insured the owners and driver of a vehicle that collided with a car driven by plaintiff Christopher Cherry. Cherry, seriously injured, sued in state court and recovered a $1.25 million default judgment. In this case, he asks for a declaration that American Country must satisfy that judgment up to its policy limits of a million dollars. American Country says it should not have to pay because its insureds never told it about the lawsuit or asked it to defend them. Cherry says a provision in Michigan's driver financial responsibility law prevents American Country from asserting that defense. It does not. But American Country personnel had plenty of notice that the lawsuit was filed and that Cherry would be asking for a default judgment. It chose to remain silent and do nothing to make its concerns known to the state court. Because American Country cannot show prejudice, which it must do under Michigan law to avail itself of its notice-of-suit requirement, it must indemnify the owners and driver for the judgment in favor of Cherry.

I.

The facts of the case are unremarkable and undisputed. On January 29, 2014, Cherry was driving westbound on Manning Street toward Hickory Street in Detroit, Michigan, when a Chrysler Town & Country minivan operated by Ruby Charlene Jones struck him at the intersection. The plaintiff sustained injuries to his head, neck, back, and extremities, and was diagnosed with disc herniation, cervical and lumbar radiculopathy, and adjustment disorder with permanent residual impairment. At the time of the accident, Jones was an insured driver under a commercial automobile liability policy issued by defendant American Country to Thomas Armstrong doing business as ATA Transportation. Armstrong also was insured under the policy, which stated that American Country would pay up to $1 million for any accident or loss.

The policy imposed several conditions precedent to American Country's duty to provide coverage in response to a lawsuit. Among other things, the insureds were required to "immediately send [American Country] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit'" and "cooperate with [American Country] in the investigation or settlement of the claim or defense against the 'suit'." The policy warned that "[n]o one may bring a legal action against [American Country] under this coverage form until . . . [t]here has been full compliance with all the terms of this coverage form."

On January 26, 2017, Cherry filed a negligence action against Jones and Armstrong in the Wayne County, Michigan circuit court. On February 15, 2017, he filed an amended complaint, adding Patty Darlene Carswell as a defendant based on her co-ownership of the offending vehicle.

On July 21, 2017, the Clerk filed an entry of default as to Armstrong and Carswell, who failed to answer or otherwise respond to the plaintiff's amended complaint. The same was entered against Jones on July 25, 2017.

On September 16, 2017, the plaintiff filed a motion for default judgment against Armstrong, Carswell, and Jones, who were served a copy of the motion, the exhibits attached thereto, and notice of hearing on the motion. On October 13, 2017, Judge David J. Allen conducted an evidentiary hearing and concluded that, based on the proofs presented, the plaintiff was entitled to a final judgment in the amount of $1,250,000. Judge Allen entered a default judgment against the three defendants, jointly and severally.

Jones, Armstrong, and Carswell apparently never took part in any of the proceedings and never informed American Country of the lawsuit. Joseph Onofrio, an assistant vice president responsible for managing American Country's claims, stated in an affidavit that Armstrong, Jones, and Carswell "did not provide notice of the underlying suit to American Country," nor did they "send American Country the complaint, summons or any other legal papers relating to the underlying suit." Onofrio added that Armstrong, Jones, and Carswell "did not request America Country to provide a defense to any of them in the underlying suit."

But American Country was not left totally in the dark. For starters, the defendant knew about the accident well before the lawsuit against its insureds was instituted. On February 5, 2014, American Country received a letter via facsimile from plaintiff's counsel, Joseph Dedvukaj, advising that he had been retained to represent the plaintiff in regard to the accident that occurred on January 29 involving the defendant's "insured vehicle." Dedvukaj wrote that he was "formally submit[ting] a mini tort claim on [his] client's behalf for [Cherry's] collision deductible." American Country's claims records include an entry from February 11 indicating that Cherry was contacted and informed that "[American Country was] paying his mini-tort" claim and that Cherry "has obtained legal counsel for injuries obtained during the loss."

After Cherry filed his negligence action in the Wayne County court, plaintiff's counsel faxed copies of the summons and complaint to American Country on March 14, 2017. The cover sheet for the fax included the claim number assigned to Cherry. On May 10, 2017, counsel for Ms. Jones apparently exchanged emails with American Country's claims department, although the substance of those communications has been redacted.

On July 20, 2017, Dedvukaj contacted Eva Soto at American Country, informing her that its insureds were in default. The email mentioned that "according to your insureds they have sent the complaint over to you and you have failed to answer on there [sic] behalf." A copy of the complaint and Judge Allen's scheduling order was attached to the email. On July 24, in what appears to be an internal email, Sue Palda, a claims supervisor at American Country, acknowledged receipt of Cherry's complaint and Dedvukaj's email. Another email was included in the exchange in which "Suit is scanned to MV, File trans to RM, and Legal flag open" was communicated to several of American Country's employees.

American Country's claim file reflects that on July 25, Joseph Onofrio and a few other American Country employees received via email a "service of process notification" in the action titled "Christopher Lee Cherry v. Ruby Charles Jones, Thomas Amstrong (DBA ATA Transportation)." The email indicated that the "attached item(s), received today, requires your immediate attention."

On August 3, Dedvukaj contacted Ms. Soto at American Country via email, noting that he had sent her the complaint and had yet to hear from anyone. He also contacted Sue Palda and told her that Thomas Armstrong, the policy holder, acknowledged receiving the lawsuit papers and said that he had forwarded them to American Country. Palda, in an affidavit, says that she emailed Armstrong's insurance agent, who denied having a record of the summons and complaint. She

also said that she left voicemail messages for Armstrong, which were not answered. And her file notes reflect that she told Dedvukaj "numerous times" that American Country would not take up the case until the insureds "tender the filing."

On September 16, 2017, Dedvukaj emailed two individuals at American Country a copy of the motion for default judgment that had been filed against Jones, Armstrong, and Carswell.

American Country does not contest that it received notice of the lawsuit from plaintiff's counsel, or that Armstrong and Jones (but not Carswell) are insureds under the policy. It acknowledges that before the default judgment was entered, it received notice of the plaintiff's lawsuit and the plaintiff's motion for default judgment. American Country also admitted that "Lupo & Koczkur, P.C. was retained as counsel for American Country to provide legal services regarding insurance coverage matters," although not expressly specifying which matters in particular.

On October 27, 2018, the plaintiff filed his original complaint in this Court seeking a declaration that the defendant is obligated to pay the final judgment entered against Armstrong, Jones, and Carswell in the Wayne County action. On November 29, 2018, the Court dismissed the complaint without prejudice because the plaintiff failed to plead sufficient facts to establish any basis for federal jurisdiction.

The plaintiff filed the same complaint in the Macomb County, Michigan circuit court on December 5, 2018. American Country removed the case to this Court based on diversity jurisdiction. After discovery closed, both parties filed motions for summary judgment.

II.

The fact that the parties have filed cross-motions does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th

Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standard when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Here, though, the parties have not seriously contested the basic facts of the case. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

This case is here under the Court's diversity jurisdiction, so the Court must "apply the same law that [the] state courts would apply." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (citing *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). That law usually comes from

the state's highest court. *Auburn Sales, Inc.*, 898 F.3d at 715. "And where [the state's intermediate] appellate courts have spoken in the Supreme Court's absence, we will normally treat those decisions as authoritative absent a strong showing that the [state's Supreme Court] would decide the issue differently." *Ibid.* (quotation marks omitted). "In this latter scenario, we must also look to other available data, such as Restatements, treatises, law reviews, jury instructions, and any majority rule among other states." *Ibid.* The parties agree that Michigan law governs.

The parties' serve-and-volley motions present two issues: (1) Does the policy's notice-of-suit condition precedent, which the insureds did not satisfy, absolve American Country of its duties to defend and indemnify? (2) Is the failure to provide notice a defense that may be asserted against a judgment creditor under Michigan's Financial Responsibility Act?

A.

Before turning to those questions, it is important to note that the plaintiff's main request is for a "declaratory judgment." He invokes a Michigan court rule as authority to make that request, which is understandable since he began this lawsuit in state court. However, Congress has authorized federal courts in appropriate cases to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have discretion to exercise jurisdiction under that statute. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014). And courts should consider the propriety of entertaining such cases at the outset. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004).

Insurance coverage cases where declaratory judgment jurisdiction is declined usually involve actions seeking "an advance opinion" on questions of indemnity in a liability lawsuit pending in another court. *E.g.*, *McCormack v. Scottsdale Ins. Co.*, 130 F. Supp. 3d 1069, 1070

(E.D. Mich. 2015); *Westfield Ins. Corp. v. Mainstream Capital Corp.*, 366 F. Supp. 2d 519, 520 (E.D. Mich. 2005). It has been observed that "[s]uch actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation giving rise to the indemnity problem." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 463 (6th Cir. 1986). The Sixth Circuit suggests five factors to weigh when deciding to keep or decline jurisdiction, asking if (1) the judgment would settle the controversy; (2) the action would serve a useful purpose in clarifying the parties' legal relations; (3) the filing amounts to a race to the courthouse to preempt certain factfinding; (4) the action would trench upon state court jurisdiction or cause friction between state and federal courts; and (5) there is an alternative remedy that is "better or more effective." *Bituminous Cas. Corp.*, 373 F.3d 812-13.

None of these factors favors declining jurisdiction. The state court case is no longer pending. The only controversy remaining focuses on insurance coverage, which a judgment here will "settle," and the parties' legal rights and obligations will be "clarify[ied]." There is no concern over "procedural fencing," *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008), or friction with the state courts. Although this case springs from a judgment in another lawsuit, the earlier case is finished, and state courts would have no reason to weigh in on the coverage question. There is another avenue for seeking relief. Coverage questions like this traditionally are teed up when a judgment creditor, such as Cherry, obtains a writ of garnishment against the judgment debtor's insurer, and the insurer disputes its obligation to pay. *See, e.g.*, *Meirthew v. Last*, 376 Mich. 33, 35, 135 N.W.2d 353, 354 (1965). But Cherry chose to seek declaratory relief in state court, and American Country removed the case to this Court. No one objected. The Court, therefore, will exercise the authority Congress granted in section 2201(a).

B.

Cherry maintains that American Country cannot avoid its obligation to pay the state court judgment because of a section of the Michigan financial responsibility law, which states:

> The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; . . . and no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against such judgment creditor.

Mich. Comp. Laws § 257.520(f)(1). American Country argues that this statute does not apply here because the policy it issued to Thomas Armstrong was not "insurance required by this chapter," that is, required by the financial responsibility law itself. The Court agrees.

"This chapter" refers to Chapter V of the Michigan Motor Vehicle Code of 1949, and it is titled "Financial Responsibility Act." *Burch v. Wargo*, 378 Mich. 200, 204, 144 N.W.2d 342, 345 (1966). The prescriptions in section 520 "refer only to policies furnished pursuant to that chapter." *Ibid.* And that, in turn, "mean[s] an owner's or an operator's policy of liability insurance, certified as provided in section 518 or section 519 as proof of financial responsibility." Mich. Comp. Laws § 257.520(a); *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 560, 817 N.W.2d 562, 570 (2012) (holding that section 520(f)(1) "does not apply to a motor vehicle liability insurance policy unless it has been certified under [Mich. Comp. Laws §§] 257.518 or [] 257.519").

There is a specific purpose for such "certified" insurance policies. Before motor vehicle liability insurance became mandatory, the Michigan Legislature enacted the Financial Responsibility Act in part to enforce the collection of judgments against negligent drivers causing accidents. *See De Vries v. Alger*, 329 Mich. 68, 74, 44 N.W.2d 872, 876 (1950). If such a driver failed to pay a liability judgment, the secretary of state "must forthwith suspend the license and

registration . . . of any person against whom such judgment was rendered." Mich. Comp. Laws § 257.512. The license and registration remain suspended until the judgment debtor satisfied the judgment and "maintains proof of financial responsibility as provided in section 517." Mich. Comp. Laws § 257.513. And proof of financial responsibility is given by posting a bond, or by obtaining a "certificate of insurance as provided in section 518 or section 519." Mich. Comp. Laws § 257.517(2).

American Country did not "certify" the policy it issued to Thomas Armstrong to establish financial responsibility under Chapter V of the Motor Vehicle Code. Instead, the policy was "contracted for and issued, not by force of any statutorily coerced 'proof of financial responsibility' but by the right of free contract." *Burch*, 378 Mich. at 204, 144 N.W.2d at 345.

Cherry says that proof of financial responsibility is not limited to non-paying judgment debtors mentioned in section 512. He cites section 257.518b, which refers to "a transportation network company driver." It appears that this section addresses insurance requirements for ride-sharing companies, and the statute specifies the types of insurance that satisfy the financial responsibility obligations of the No-Fault Insurance Act. And he reasons that because under the no-fault act *all* drivers must carry liability insurance, *see* Mich. Comp. Laws § 500.3010(1), the certificate of no-fault insurance that American Country admittedly issued to the secretary of state triggers section 520(f)(1).

But that argument runs headlong into another section of the Financial Responsibility Act. Section 522 states that Chapter V "shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state." Mich. Comp. Laws § 257.522(1). The no-fault act, found in Michigan's Insurance Code, surely is an "other law" to which Chapter V, and its section 520(f)(1), does not "apply."

Because the motor vehicle liability policy issued to Armstrong and his company did not amount to insurance required by that chapter, section 520(f)(1) does not stand as a bar to American Country's notice-of-suit defense.

C.

American Country insists that the requirement that its insured immediately send it copies of the suit papers is a "condition precedent" to its obligation to defend and indemnify. There is no dispute that this language is found in the policy. Because "[i]nsurance policies are contracts," traditional contract rules of construction apply. *Henry Ford Health System v. Everest National Insurance Co.*, 326 Mich. App. 398, 402-03, 927 N.W.2d 717, 720 (2018) (quoting *Titan Ins.*, 491 Mich. at 554, 817 N.W.2d at 567). The construction rules are straightforward: effectuate the intent of the parties; determine the intent from the words used; consider the words in context; ascribe common meanings to undefined contract terms; and relegate no term to insignificance. *American Tooling Center, Inc. v. Travelers Casualty & Surety Co. of America*, 895 F.3d 455, 459-60 (6th Cir. 2018) (quoting *Citizens Insurance Co. v. Pro-Seal Service Group, Inc.*, 477 Mich. 75, 83, 730 N.W.2d 682, 686 (2007)); *Drouillard v. American Alternative Insurance Corp.*, 323 Mich. App. 212, 217, 916 N.W.2d 844, 846-47 (2018) (quoting *Hunt v. Drielick*, 496 Mich. 366, 372, 852 N.W.2d 562, 565 (2014)).

"Provisions in liability insurance contracts requiring the insured to give the insurer immediate or prompt notice of accident or suit are common, if not universal." *Wendel v. Swanberg*, 384 Mich. 468, 477, 185 N.W.2d 348, 352 (1971). Those provisions are intended "to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims." *Ibid.* (citations omitted).

American Country relies heavily on the statement in *Koski v. Allstate Insurance Company* that "one who sues for performance of a contractual obligation must prove that all contractual conditions prerequisite to performance have been satisfied." 456 Mich. 439, 444, 572 N.W.2d 636, 639 (1998). But it neglected to quote the language that followed, warning that "an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position." *Ibid.* (citing *Weller v. Cummins*, 330 Mich. 286, 47 N.W.2d 612 (1951); *Wendel*, 384 Mich. 468, 185 N.W.2d 348); *accord AMI Entertainment Network, Inc. v. Zurich Am. Ins. Co.*, 526 F. App'x 635, 637 (6th Cir. 2013) ("Michigan public policy prohibits a party from refusing to indemnify based on a failure to notify the insurance company in a timely manner in the absence of prejudice to the insurance company.").

"An insurer suffers prejudice when the insured's delay in providing notice materially impairs the insurer's ability to contest its liability to the insured or the liability of the insured to a third party." *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich. App. 429, 448, 761 N.W.2d 846, 859 (2008) (citing *Wendel*, 384 Mich. at 477, 185 N.W.2d at 348). "Although the question of prejudice is generally a question of fact, it is one of law for the court when only one conclusion can be drawn from the undisputed facts." *Ibid.* (internal citations omitted).

> In determining whether an insurer's position has actually been prejudiced by the insured's untimely notice, courts consider whether the delay has materially impaired the insurer's ability: (1) to investigate liability and damage issues so as to protect its interests; (2) to evaluate, negotiate, defend, or settle a claim or suit; (3) to pursue claims against third parties; (4) to contest the liability of the insured to a third party; and (4) to contest its liability to its insured.

*Ibid.* (quoting *Aetna Cas. & Surety Co. v. Dow Chem. Co.*, 10 F. Supp. 2d 800, 813 (E.D. Mich. 1998)).

But we are not dealing here with an issue of delay or failure to provide any notice whatsoever; American Country readily admits that it knew about the underlying lawsuit. It could hardly deny it. It already had paid Cherry a small amount for property damage to his own vehicle and processed a first-party no-fault claim by its own insured, Ruby Jones, arising from the same accident. Cherry's lawyer was in regular contact with the claim representatives, sending a pre-suit letter and periodic emails, placing phone calls, forwarding copies of the suit papers and the motion for default judgment. He did everything but take the claims representatives by the hand and lead them to the courthouse. Instead, American Country asserts, without citing any authority, that, "While Cherry notified American Country of the underlying suit, such notice by a third party is insufficient to trigger coverage under Michigan law." That is not an accurate statement of Michigan law.

Certainly, there is no duty on an insurer "to determine if suit has been filed and served when its policyholder has not forwarded suit papers." *Koski*, 456 Mich. at 446, 572 N.W.2d at 640. "[N]or should an insurer be saddled with the 'sentry duty of tracking back and forth to the courthouse to keep a check on if or when [the insured] may be served with process.'" *Ibid.* (quoting *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 369 (Tex., 1978)). However, "an insurer who knows of legal proceedings instituted against its insured, but nevertheless chooses to rest on its claim of noncoverage, faces a heavy burden in demonstrating prejudice from its insured's failure to comply with a notice provision." *Id.*, 456 Mich. at 446, 572 N.W.2d at 640 n.7.

In *Weller v. Cummins*, the Michigan Supreme Court explained that in light of the principles underlying conditions requiring notice, "if the insurance company received adequate and timely information of the accident or the institution of an action for the recovery of damages it is not

prejudiced, *regardless of the source of its information*." 330 Mich. at 293, 47 N.W.2d at 615 (emphasis added). Since then, Michigan courts applying these principles have rejected American Country's proposed end-run around the prejudice requirement. *See*, *e.g.*, *Auto Club Ins. Ass'n v. Hall*, 2005 WL 1813225 (Mich. Ct. App. Aug. 2, 2005) ("[I]t is well established that notice of suit from *any source* triggers an insurer's duty to defend.") (emphasis added).

The defendant takes its contention one step further, asserting that the insureds were required to "formally tender" their defense to American Country before the duty to defend was triggered. The defendant relies primarily on *Fireman's Fund Insurance Companies v. Ex-Cell-O Corporation*, 790 F. Supp. 1318 (E.D. Mich. 1992), a case that concerned the defense costs for legal and investigative expenses that should be awarded in a declaratory judgment action, which since has fallen out of favor in this district. *See Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 44 F. Supp. 2d 847, (E.D. Mich. 1997) (rejecting the argument based on *Fireman's* "that absent tender, there can be no duty to defend" and finding *Fireman's* "to be wrongly decided"). In any event, *Koski* and other cases that postdate *Fireman's* make clear that when "adequate information" is provided, the insurance company will not be heard to complain.

American Country says that it was prejudiced because appearing in the lawsuit before its insureds formally tendered the suit papers might compromise an improper-service defense. And it would not have been able to answer the complaint without information allowing it to take a position on the allegations or interpose affirmative defenses, like comparative negligence. But that was not American Country's only option. It could have conducted its own investigation of the accident and responded accordingly to the complaint. It could have tried to settle the claim by negotiating with the plaintiff. It could have reserved its rights against its insureds. And, in the ten months between the commencement of the lawsuit and the hearing on the default judgment motion,

it could have filed its own declaratory judgment action in the state court to determine its obligations *before* judgment was entered against its insureds. Instead, American Country chose to do nothing.

American Country has not and cannot establish that it suffered actual prejudice based on the undisputed facts. This is not one of those cases where the insurance company only learned of a lawsuit against one of its insureds long after default judgment was entered. *See e.g.*, *Williams v. Travelers Prop. & Cas. Co. of Am.*, No. 301454, 2012 WL 2476663, at *3 (Mich. Ct. App. June 28, 2012) (explaining that the defendant insurance company established that it was prejudiced by the two-year delay in notice regarding the tort action instituted against its insureds that resulted in a default judgment). Rather, the record is clear that American Country knew of the tort action and elected not to participate, apparently hoping to succeed on a technicality if the plaintiff ever sought to collect. Michigan courts frown upon that approach. American Country's motion for summary judgment will be denied.

D.

That leaves the question whether the plaintiff is entitled to affirmative relief as a matter of law. When Cherry filed this case in state court, he asked for a declaratory judgment under a Michigan court rule that "American Country Insurance Company owed a duty to defend in the underlying suit." He also asked that the Court "give full faith and credit pursuant to United States Constitution Art. IV, § 1, 28 U.S.C. § 1738 and § 1739 to the state court final judgment against Defendant's insureds." Cherry now seeks a judgment against American Country for $1 million.

Parsing the amended complaint, the only discernable legal theory that emerges is a claim that American Country had a duty to defend its insureds because it cannot assert a coverage defense. Cherry is entitled to the requested declaration that American Country owed a duty to defend and indemnify its insureds in the underlying lawsuit where the only asserted defense to

coverage was notice. The plaintiff apparently anticipated only that defense when drafting the amended complaint, which would explain why he exclusively relies on Michigan Compiled Laws § 257.520(f)(1) to support his position.

But section 257.520 does not itself create a cause of action for affirmative relief under which the plaintiff can collect the judgment. Rather it serves to spell out an insurance carrier's rights and responsibilities in coverage disputes. *See generally* Mich. Comp. Laws § 257.520. And, as noted above, it does not apply to the insurance policy in this case. If the plaintiff actually wishes to collect the judgment, he must institute garnishment proceedings in the Wayne County case under Michigan Court Rule 3.101. *See*, *e.g.*, *Kleit v. Saad*, 153 Mich. App. 52, 53-54, 395 N.W.2d 8, 9 (1985).

### III.

American Country received notice of the lawsuit in state court that led to a default judgment against its insureds. Michigan case law makes clear that it does not matter where the notice came from. In the absence of any other asserted defenses to coverage, the plaintiff is entitled to the requested declaration that the defendant had a duty to defend, and now to indemnify. But in order to actually collect the judgment, the plaintiff must institute garnishment proceedings as a judgment creditor.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 10) is **GRANTED IN PART AND DENIED IN PART**. It is **DECLARED** that defendant American Country Insurance Company has a duty to defend and indemnify its insureds under the automobile residual insurance policy issued to Thomas Armstrong, doing business as ATA Transportation, for the judgment rendered in Wayne County, Michigan circuit court case number 17-001972-NI.

It is further **ORDERED** that the defendant's motion for summary judgment (ECF No. 15) is **DENIED**.

                                                 s/David M. Lawson
                                                 DAVID M. LAWSON
Dated: March 27, 2020                         United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 27, 2020.

                                   s/Susan K. Pinkowski
                                   SUSAN K. PINKOWSKI